**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Susan Carol BRIGGS,**
**Defendant–Appellant.**

**Nos. 90–1201, 90–1204 and 90–1205.**

United States Court of Appeals,
Fifth Circuit.

Aug. 2, 1991.

Robert Udashen, Dallas, Tex., for defendant-appellant.

Delonia A. Watson, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Dallas, Tex., for plaintiff-appellee.

## ON REHEARING

Before GOLDBERG, KING and DUHÉ, Circuit Judges.

GOLDBERG, Circuit Judge:

We *sua sponte* grant rehearing and withdraw our prior opinion in this case, 920

F.2d 287 (5th Cir.1991), substituting the following:

Susan Briggs stole over $5 million dollars from her employers by initiating wire transfers from their accounts to hers and others. She pleaded guilty in 1986 to charges of bank fraud and transportation of stolen money and was sentenced to a total of thirty years' imprisonment. Subsequently, in a 28 U.S.C. § 2255 motion, she challenged the validity of her guilty plea on the grounds that it was not knowing and intelligent. In essence, she maintained that she did not obtain funds by means of false or fraudulent pretenses, representations, or promises, as required by the bank fraud statute, 18 U.S.C. § 1344, and therefore her plea of guilty to that charge was not an informed one. Briggs' motion was denied without an evidentiary hearing, and she appealed.[1]

We conclude that the facts alleged in Briggs' § 2255 motion, if proved to be true, would support a due process claim. Because her claim is not conclusively contradicted by the record in the criminal case, we remand this case to the district court for an evidentiary hearing at which time Briggs can endeavor to substantiate her allegations.

### I. Facts and Proceedings Below

From 1981 through 1986, Susan Briggs worked for Electronic Data Systems (EDS) and Southmark Corporation, both located in Dallas. She was employed in the Treasury Department at EDS and as an Assistant Cash Manager at Southmark. Her duty at both corporations was to cause transfers of funds from company bank accounts "when necessary for actual business transactions." Rec. Excerpts at 58, 59 (Defendant's Factual Resume). The record does not otherwise detail the scope of Briggs' authority nor indicate to what extent, if at all, the banks were responsible for monitoring and policing the legitimacy of her transactions.

Regardless of the exact scope of her authority, Briggs exceeded the bounds when she decided to instigate some trans-

---

1. Briggs does not challenge her conviction for     transportation of stolen money.

fers to her own accounts. From 1984 through 1986 she initiated over a dozen unauthorized transfers from company accounts belonging to Southmark and to National Heritage Insurance Company, an EDS subsidiary. These transfers were made to Dallas accounts belonging to herself, her two sons, and a friend. She and her friend then transferred some of this money from their local accounts to accounts in the Cayman Islands. Briggs contends and the government does not dispute that Briggs' employers, not the banks, suffered the losses from these schemes; the record supports this assertion. There is no indication that the banks were or could have been found civilly liable to EDS and Southmark.

Precisely how Briggs effected these transfers is unclear.[2] The factual resume supporting Briggs' plea states merely that she "caused" various wire transfers;[3] the indictments use the same phraseology, adding only that she "had access to the funds of Southmark by means of written or verbal transfer orders." A letter from Southmark's counsel states that Briggs accomplished her scheme by "manipulation of wire transfer instructions." An FBI agent testified at the preliminary hearing that Briggs had "authorized, initiated" or "initiat[ed] and approv[ed]" at least one of the wire transfers, and that the transfer had been "physically initiated" by a bank employee "based on instructions from" Briggs. The record does not disclose the nature and content of these instructions.

By late 1986 Briggs had accumulated $5.2 million of her employers' funds and a variety of criminal charges. The latter consisted of three counts of bank fraud (18 U.S.C. § 1344), seven counts of wire fraud (18 U.S.C. § 1343), ten counts of transportation of stolen money (18 U.S.C. § 2314), and related counts of conspiracy (18 U.S.C. § 371) and aiding and abetting. Briggs pleaded guilty to two bank fraud counts and four stolen money counts, in exchange for which the government agreed to dismiss the remaining charges and bring no other charges relating to her employment with EDS and Southmark. The district court sentenced Briggs to a total of twenty years on the stolen money charges and ten years on the bank fraud charges, with these sentences to run consecutively. She began serving this thirty-year sentence in December 1986.

Briggs did not appeal her convictions, but she did file a motion for reconsideration seeking reduction of her sentence, pursuant to former Fed.R.Crim.P. 35.[4] The trial court denied the motion. In April 1989, she filed a 28 U.S.C. § 2255[5] motion to vacate the judgment and sentence as to the bank fraud convictions. In March 1990, the district judge adopted the magistrate judge's recommendation that the motion be denied. Briggs subsequently appealed.

## II. Discussion

### A. The Bank Fraud Statute

As enacted in 1984, and as applicable to this case, the bank fraud statute provided in relevant part:

(a) Whoever knowingly executes, or attempts to execute, a scheme or artifice—

(1) to defraud a federally chartered or insured financial institution; or

---

2. The record consists primarily of testimony at three hearings and the brief factual resume supporting Briggs' plea.

3. Briggs' verbal plea contains no further detail; the factual portion of her colloquy with the court consisted simply of an affirmative answer to the judge's inquiry as to whether the factual resume was "a correct statement." *See* Tr. of Plea of Guilty 12.

4. Former Rule 35(b) provided: "A motion to reduce a sentence may be made ... within 120 days after the sentence is imposed...."

5. Section 2255 provides in pertinent part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

(2) to obtain any of the moneys, funds, credits, assets, securities or other property owned by or under the custody or control of a federally chartered or insured financial institution by means of false or fraudulent pretenses, representations, or promises, shall be [fined or imprisoned].

Former 18 U.S.C. § 1344(a).[6]

The government charged Briggs under indictments and an information whose language comprehends both provisions of § 1344(a), so we must determine if her conduct amounts to a violation under either subsection. *Cf. United States v. Medeles*, 916 F.2d 195, 197–98 (5th Cir.1990) (where indictment and jury charge do not allege elements of a subsection of statute, conviction cannot be sustained under that subsection). We consider each provision in turn.

*1. Defrauding a Bank*

■ Former subsection (a)(1) prohibits "a scheme or artifice ... to defraud a financial institution." The indictment and information to which Briggs pleaded guilty, and the factual resume supporting her plea, refer only to the theft of her employers' funds. The record does not indicate that the banks suffered any loss, actual or potential, as a result of Briggs' conduct; indeed, the government does not argue that

she attempted to obtain funds belonging to the banks, but only that she attempted to obtain funds under the custody and control of the banks—a violation of subsection (a)(2), not (a)(1). Accordingly, subsection (a)(1) is not applicable to the conduct of which the government accused Briggs.[7]

*2. Obtaining Funds by Means of False Representations*

The second provision of former section 1344, subsection (a)(2), comes closer to Briggs' conduct. This subsection punishes anyone who

knowingly executes, or attempts to execute, a scheme or artifice ... to obtain any of the moneys, funds, credits, assets, securities or other property owned by or under the custody or control of a federally chartered or insured financial institution by means of false or fraudulent pretenses, representations, or promises....

Former 18 U.S.C. § 1344 & 1344(a)(2).

As the funds in this case were not owned by the banks, the parties focused their discussion on the "custody or control" language. It is unclear how to square this phrase with the legislative history, which emphasizes that the purpose of the statute is the protection of financial institutions themselves.[8] Is the financial institution

---

**6.** A 1989 amendment substituted the term "financial institution" for "federally chartered or insured financial institution." *See* Financial Institutions Reform, Recovery, and Enforcement Act, Pub.L. No. 101–73, tit. IX, § 961(k), 103 Stat. 500 [hereinafter FIRREA]; 1989 U.S.Code Cong. & Admin.News 86, 196–97 (legislative history of amendment); *see also* 18 U.S.C. § 20 (defining "financial institution"). Briggs' conduct and prosecution occurred under the unamended version of the statute, but our discussion is equally relevant to the statute as it exists today. The numbering has changed, however, from §§ 1344(a)(1) and (2) to §§ 1344(1) and (2).

FIRREA also increased the penalties for violation of § 1344. *See* FIRREA, § 961(k); 1989 U.S.Code Cong. & Admin.News 86, 196–97. This change was one of several that reflect the gravity of fraud in the banking system. *See, e.g.,* FIRREA, §§ 961(i), 961(j) (amending mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, to provide greatly enhanced penalty for violation that "affects a financial institution").

**7.** *See United States v. Hooten,* 933 F.2d 293, 295–96 (5th Cir.1991) (§ 1344(a)(1) is applicable where bank is victim).

Briggs was not accused, the government does not argue, and we do not decide if, in the proper circumstances, a scheme that defrauds the defendant's employer of funds might also be considered to have defrauded the financial institution of intangible rights in violation of subsection (a)(1). *See United States v. McClelland,* 868 F.2d 704, 705, 709 (5th Cir.1989); *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987); 18 U.S.C. § 1346.

**8.** For example, the Senate Judiciary report says that § 1344 is "designed to provide an effective vehicle for the prosecution of frauds *in which the victims are financial institutions.*" *See* S.Rep. No. 225, 98th Cong., 2d Sess. 377–79 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3517–19 (emphasis added); *see also id.* at 3519 (similar). The House Judiciary report is similar. *See* H.R.Rep. No. 901, 98th Cong., 2d Sess. 2–3, 4 (1984); *United States v. Blackmon,* 839 F.2d 900, 905–06 (2d Cir.1988) (reprinting portions of both reports).

the victim in a scheme whose execution causes it no actual or potential loss? Briggs says no. Noting the dangers that inhere in over-federalizing garden variety fraud, she suggests that the "custody or control" language only applies where the defendant is an employee of the bank from which she obtains the funds. This interpretation, although imaginative, finds no support in the statutory text or legislative history, other than the need to reconcile or ignore the apparent textual inconsistency.

■ We turn instead to another clause of subsection (a)(2), the requirement that the scheme be "by means of false or fraudulent pretenses, representations, or promises." So far as the sparse record discloses, Briggs made no explicit false representations, statements, or promises in carrying out her scheme. However, the government argues that the bare act of instructing a bank to transfer funds is, in itself, a representation of one's authority to order the transfer.

This contention, however, is foreclosed by our precedent. In *United States v. Medeles*, 916 F.2d 195 (5th Cir.1990), we disapproved a similar theory in the context of a check-kiting scheme. The defendant in that case, Medeles, maintained checking accounts at three federally insured banks. He kited checks between these accounts, knowing the checks to be drawn on insufficient funds. In the course of this scheme, Medeles made no explicit false representations. Ultimately, he withdrew $3700 and flew to Las Vegas for a gambling spree.

Medeles was indicted and convicted under the same statute at issue here, former 18 U.S.C. § 1344(a)(2). The conviction was premised on the notion that by depositing the checks, Medeles implicitly represented that they were good. Since Medeles knew this to be false, the government characterized the act of depositing the checks as a (knowing) false representation. We reversed, holding that "the depositing of a series of known insufficient funds checks does not alone constitute 'false or fraudulent pretenses, [or] representations.'" *Medeles*, 916 F.2d at 202 (brackets in original).[9]

In reversing *Medeles'* conviction, we relied on *Williams v. United States*, 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982), in which the Supreme Court considered a check kiting conviction under 18 U.S.C. § 1014, which prohibits the making of certain "false statement[s]" for the purpose of influencing the actions of a federally-insured bank. In reversing the conviction, the Supreme Court reasoned:

> [A] course of conduct [consisting of depositing several checks knowing them not to be supported by sufficient funds] [does] not involve the making of a "false statement" for a simple reason: technically speaking, a check is not a factual assertion at all, and therefore cannot be characterized as "true" or "false." ... A check [does] not, in terms, make any representation as to the state of [one's] bank balance.

*Williams*, 458 U.S. at 284–85, 102 S.Ct. at 3091. Although this reasoning has been criticized as overly technical,[10] we are of course bound by it.

■ The rationale for *Williams* and *Medeles* is that an order to a bank contained in a check is not a factual representation and therefore cannot be a misrepresentation. This rationale applies with equal force to a wire transfer order. The bare act of instructing a bank to transfer funds is not a factual representation; thus, it cannot be a *mis*representation, a *false* representation, or *any kind* of representation.

Nor do we view wire transfer orders as necessarily constituting or accompanied by a "false or fraudulent ... promise[ ]." Whereas a check is a promise to pay the holder upon the dishonor of the check, *see Medeles*, 916 F.2d at 200 n. 8, we under-

---

**9.** Neither the indictment nor the charge mentioned "promises," so the *Medeles* court did not discuss that term. *See id.* at 198 n. 5.

**10.** *See id.* at 291–92, 102 S.Ct. at 3095 (dissenting opinion of White, J.), 292, 295–98, 102 S.Ct. at 3095, 3097–99 (dissenting opinion of Marshall, J.); *see also United States v. Kucik*, 844 F.2d 493, 498 (7th Cir.1988) (discussing theft by false pretenses under bank robbery statute, 18 U.S.C. § 2113).

stand a wire transfer order to be simply an instruction to a bank, unaccompanied by a promise of any kind.[11] Nothing in the record contradicts our general understanding.

The mere act of ordering or causing to be ordered a wire transfer does not of itself necessarily constitute a misrepresentation in all circumstances. To hold otherwise would effectively eliminate the requirement that the government prove misrepresentation. We see no justification for editing the congressional enactment in this fashion, particularly when the conduct at issue falls *outside* the core concerns of the statute. We will not lightly excise an essential element from a criminal statute.

▮ We do not hold that the ordering of a wire transfer can never involve misrepresentation, only that the act *itself* does not constitute misrepresentation. For example, our precedent makes clear that § 1344(a)(2) would encompass a wire transfer order containing an *actual* misrepresentation (e.g., a false recitation of the authority for its issuance).[12] Thus, where the defendant falsely represents that she is acting under her employer's authority, we would have little trouble concluding that such conduct is squarely prohibited by the statute. Nor do we suggest that there can never be an implied misrepresentation of

authority in such circumstances; we only hold that the mere fact that the transfer was ordered does not of itself, without further showing of the circumstances, necessarily amount to a misrepresentation.

### B. Due Process

The record of Briggs' guilty plea does not reflect any representations, pretenses, or promises at all—false or otherwise—from which we might conclude that Briggs' conduct constituted a violation of subsection § 1344(a)(2). Because we have also determined that subsection (a)(1) is not applicable to her conduct at all, we conclude that Briggs has alleged a viable due process challenge to the validity of her conviction. We explain.

▮ In order for a guilty plea to satisfy the requirements of due process, the plea must constitute an intelligent admission of the commission of the offense based on the receipt of real notice of the true nature of the charge.[13] The defendant must have "a full understanding of what the plea connotes";[14] in particular, she must "possess[ ] an understanding of the law in relation to the facts."[15] A plea is not voluntary if the accused "has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt."[16] At the core of our

---

11. *See, e.g.,* Subpart B of Regulation J of the Federal Reserve System, 12 C.F.R. § 210.25–.38 (1990) (defining and governing wire transfers); *Walker v. Texas Commerce Bank,* 635 F.Supp. 678, 680 (S.D.Tex.1986) (paragraph 12) (describing one bank's procedure for initiating oral wire transfers).

12. *See United States v. Gunter,* 876 F.2d 1113, 1116 (5th Cir.1989) (express false representation on back of automobile title certificate constitutes false statement); *McClelland,* 868 F.2d at 705, 709 (misrepresentation requirement of § 1344 satisfied where "evidence show[ed] that [defendant] submitted documents [to bank] that he [falsely] represented to be true copies of quarterly sales tax returns") (emphasis added); *United States v. Robichaux,* 698 F.Supp. 107 (E.D.La.1988) (falsified sale amounts on credit card receipts deposited in bank constitute false statements under 18 U.S.C. § 1014).

13. *Henderson v. Morgan,* 426 U.S. 637, 645, 96 S.Ct. 2253, 2257, 49 L.Ed.2d 108 (1976) (citing

*Smith v. O'Grady,* 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941)); *see also McCarthy v. United States,* 394 U.S. 459, 466 & n. 16, 89 S.Ct. 1166, 1171 & n. 16, 22 L.Ed.2d 418 (1969) ("if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void").

14. *Boykin v. Alabama,* 395 U.S. 238, 244, 89 S.Ct. 1709, 1713, 23 L.Ed.2d 274 (1969).

15. *McCarthy v. United States,* 394 U.S. at 466–67, 89 S.Ct. at 1171 (footnote omitted); *Brady v. United States,* 397 U.S. 742, 748 & n. 6, 90 S.Ct. 1463, 1469 & n. 6, 25 L.Ed.2d 747 (1970).

16. *McCarthy,* 394 U.S. at 465 n. 13, 89 S.Ct. at 1170 n. 13; *see also Willett v. Georgia,* 608 F.2d 538, 540 (5th Cir.1979) (citations omitted) ("A guilty plea is constitutionally valid only if the defendant has made a 'voluntary and intelligent choice' among the various courses of conduct open to him or her").

jurisprudence on this subject is a recognition that

> the guilty plea [is] perhaps the supreme instance of waiver known to our system of justice, one by which all of its trial rights and safeguards are voluntarily foregone, and the defendant deliberately submits to conviction. If this is to be permitted, at the minimum a decent system of justice will concern itself that the admission is voluntary and the defendant knows what it is he is admitting, *so that he does not mistakenly consent to be punished for a crime he did not commit.*[17]

Simply put, to convict someone of a crime on the basis of conduct that does not constitute the crime offends the basic notions of justice and fair play embodied in the Constitution.[18]

■ Briggs contends that she pleaded guilty in the mistaken belief that the act of ordering the funds transferred, in itself, amounted to a sufficient misrepresentation under the bank fraud statute. She also maintains that she did not make a misrepresentation in connection with the wire transfer order. In sum, she alleges that she pleaded guilty to a crime which she now understands not to encompass her conduct, and therefore, her plea of guilty was not knowing and intelligent. Since we hold that the act of ordering the transfer of funds, without more, does not amount to a violation of the bank fraud statute, we agree with Briggs that her § 2255 motion sufficiently alleges a due process challenge to the validity of her guilty plea.

## C. Remedy

■ As we have explained, the record of the plea proceedings, including the factual resume upon which Briggs' guilty plea was based, discloses no evidence of the essential element of misrepresentation. *See* former 18 U.S.C. § 1344(a)(2) (now § 1344(2)). Where, as here, the allegations in the § 2255 motion are not negated by the record, the district court must hold an evidentiary hearing to "decide all of these unresolved factual allegations which, if true, might support [her] constitutional claim...."[19] At the hearing, Briggs must develop a factual record substantiating her assertion that she unknowingly and unintelligently pleaded guilty to the bank fraud counts.[20] She must prove that at the time she entered her plea of guilty, she believed that her conduct did not include a misrepresentation (and was therefore not bank fraud as defined by the statute). Because

**17.** *United States v. Dayton,* 604 F.2d 931, 938 (5th Cir.1979) (en banc) (emphasis added), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980); *see also Boykin,* 395 U.S. at 242–45, 89 S.Ct. at 1711–13; *Johnson v. Puckett,* 930 F.2d 445, 448 (5th Cir.1991).

**18.** The closest the Constitution comes to permitting such a conviction is the *Alford* plea, in which a defendant who protests her innocence is nonetheless permitted to plead guilty. But significantly, even *Alford* pleas are not accepted unless "there is a factual basis for the plea." *North Carolina v. Alford,* 400 U.S. 25, 38 n. 10, 91 S.Ct. 160, 167 n. 10, 27 L.Ed.2d 162 (1970); *United States v. Davila,* 698 F.2d 715, 723 (5th Cir.1983); *Morse v. Texas,* 691 F.2d 770, 773 (5th Cir.1982) (requiring "substantial showing of guilt").

**19.** *Friedman v. United States,* 588 F.2d 1010, 1012, 1015 (5th Cir.1979); *accord United States v. Auten,* 632 F.2d 478, 482 (5th Cir. Unit A 1980) ("Under 28 U.S.C. § 2255, unless the motion and record as constituted show conclusively that relief is not available, an evidentiary hearing should be held"); *see* 28 U.S.C. § 2255 ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon....").

**20.** *Cf. United States v. Birdwell,* 887 F.2d 643, 645 (5th Cir.1989) ("When a petitioner's habeas claim is based on an unkept promise in a plea agreement, and his petition contains 'specific factual allegations not directly contradicted by the record, of the circumstances undermining his plea,' an evidentiary hearing is warranted"); *Hall v. Maggio,* 697 F.2d 641, 643 (5th Cir.1983) (holding in the context of a habeas proceeding under § 2254, that "[i]t is permissible ... for a habeas court to determine whether the plea was voluntary and intelligent from the facts adduced at an evidentiary hearing before it") (citing cases); *see also United States v. Patterson,* 739 F.2d 191, 197 (5th Cir.1984) (Clark, C.J., dissenting) ("since [petitioner] has alleged prejudice in his [§ 2255] pleadings [in connection with his guilty plea] and since it is not conclusively contradicted by the record, [petitioner] is now entitled to an opportunity to prove it").

she previously pleaded guilty, the burden of proof is hers.

### III.  Conclusion

For the reasons stated in this opinion, we VACATE the judgment of the district court dismissing Briggs' § 2255 petition, REMAND for an evidentiary hearing, and ORDER that the mandate issue in 21 days unless otherwise ordered.