United States Court of Appeals,

Fifth Circuit.

No. 95-30638.

UNITED STATES of America, Plaintiff-Appellee,

v.

Stanley J. GAUDET, Defendant-Appellant.

April 30, 1996.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before REAVLEY, DAVIS and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Stanley Gaudet appeals the denial of his motion under 28 U.S.C. § 2255 for vacatur of his conviction and sentence. He argues that the court that convicted and sentenced him lacked jurisdiction to do so because he had not waived his right to be prosecuted by indictment. He also contends that he received ineffective assistance of counsel. Concluding that Gaudet's arguments are without merit, we affirm.

I.

Gaudet pled guilty to twenty-three counts of embezzlement. *See United States v. Gaudet,* 966 F.2d 959, 960 (5th Cir.1992) (*Gaudet I* ), *cert. denied,* 507 U.S. 924, 113 S.Ct. 1294, 122 L.Ed.2d 685 (1993). Although he was validly indicted on all of those counts, he actually pled to a superseding bill of information for the first twenty-two, and to the original indictment for the twenty-third. The bill of information differed from the indictment in only two ways: (1) It did not include the twenty-third count,

which continued to survive as the sole count in the indictment; and (2) it characterized the first twenty-two counts as "continuing offenses."

Gaudet's retained counsel, Provino Mosca, had requested a superseding bill of information for the first twenty-two counts as part of his defense strategy, which was based on Mosca's "straddle offense" theory: By characterizing the offenses as continuous, Mosca hoped to argue that none of the offenses was completed until 1989, after the November 1, 1987, effective date of the sentencing guidelines. Mosca thus hoped to require application of the sentencing guidelines to every count, which in his judgment created the probability of a much more lenient sentence.[1]

Shortly after Gaudet pled guilty, Mosca withdrew from the case; federal public defender John Craft was appointed to replace him. At sentencing, the district court applied pre-guidelines law to the first eighteen counts and applied the sentencing guidelines to the remaining five counts. *See id.* at 961. It also ordered Gaudet to surrender his pension benefits in order to satisfy a restitution award. *See id.* Craft did not object to any of these actions.

On direct appeal, Gaudet argued, *inter alia,* that (1) the court should have applied the guidelines to all twenty-three

_____

[1]By bringing the offenses within the aegis of the guidelines, Mosca hoped to minimize the effect that public sentiment might have had on Gaudet's well-publicized prosecution and sentencing. Mosca explained to Gaudet that there was no guarantee that the district court would apply the sentencing guidelines, but he also advised Gaudet that a sentence based on a contrary analysis would be vulnerable to challenge on appeal.

2

counts, and (2) the court's order divesting him of pension benefits was illegal under the Employee Retirement Income Security Act of 1974 ("ERISA"). *See id.* Because Gaudet failed to object to these alleged errors, we applied the stringent plain error standard of review to his claims. *See id.* at 962-63. Holding that neither of Gaudet's claimed errors met that standard, we affirmed. *See id.* at 962, 964.

Proceeding *pro se,* Gaudet filed this § 2255 motion for vacatur of his conviction and sentence on the ground of ineffective assistance of counsel.[2] After retaining counsel for the § 2255 proceeding, Gaudet amended his motion to include a challenge to the court's jurisdiction to accept his guilty plea, based on the ground that he had not waived his right to be prosecuted by indictment as required by FED.R.CRIM.P. 7(b). The district court denied his motion, and Gaudet appeals.[3]

---

[2]We leave the specific facts of the ineffective assistance allegations to the legal discussion below.

[3]Gaudet also argues that the government violated a purported "plea agreement" in which the government, in return for Gaudet's guilty plea, agreed to file a superseding bill of information characterizing the first twenty-two counts as continuing offenses. The government did file such a bill of information with the understanding that Gaudet would voluntarily plead guilty to such an information, as well as to the sole surviving count in the indictment. Gaudet acknowledges that the government filed a bill of information as he requested, but complains that the government did not take the position that the sentencing guidelines covered all of the charged counts.

There is no evidence in the record that the government offered any consideration for Gaudet's guilty plea. Rather, Gaudet volunteered to plead guilty—all he asked for was a modification of the charging instrument, a request the government granted. Gaudet's defense strategy was to have the government make the requested changes in the bill of

II.

" "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.' " *United States v. Segler,* 37 F.3d 1131, 1133 (5th Cir.1994) (quoting *United States v. Vaughn,* 955 F.2d 367, 368 (5th Cir.1992) (per curiam)). When raising issues of jurisdictional or constitutional magnitude for the first time on collateral review,[4] a defendant ordinarily must show both cause for his procedural default and actual prejudice resulting from the error. *See id.; United States v. Shaid,* 937 F.2d 228, 232 (5th Cir.1991) (en banc), *cert. denied,* 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992). This cause-and-actual-prejudice standard is significantly more

---

information—without telling the government why he wanted those changes—and to argue at sentencing that the sentencing guidelines applied to all of the charged counts (under the straddle offense theory). We find it somewhat ironic that Gaudet complains of breach by the government when his defense strategy consisted of trying to deceive the government.

In any case, we are faced here with more than just the absence of evidence of a plea agreement. Gaudet testified, in open court and under oath, that there was no plea agreement. The prosecutor also stated, in open court and under oath, that there was no plea agreement. We therefore do not entertain further the argument that the government violated a purported plea agreement.

[4]Gaudet's argument that he did not validly waive his right to be prosecuted by indictment does implicate the jurisdiction of the district court that convicted and sentenced him. *See United States v. Moore,* 37 F.3d 169, 173 (5th Cir.1994). *United States v. Montgomery,* 628 F.2d 414, 416 (5th Cir. Unit A 1980) (per curiam). His Sixth Amendment claim of ineffective assistance of counsel is, of course, constitutional in nature.

4

rigorous than even the plain error standard we applied on direct appeal. *See id.*

In this case, however, Gaudet need not show cause and prejudice, as that standard applies only when the government raises the procedural bar in the district court. *See United States v. Drobny,* 955 F.2d 990, 995 (5th Cir.1992). This is true even when the government is the appellee (as was the case in *Drobny* ). In this case, the government did no more than object to Gaudet's waiver-of-indictment claim as a "last minute maneuver" coming at the "11th hour." These remarks are too equivocal to invoke the procedural bar. *See id.*

Even if the government had raised the procedural bar, Gaudet's ineffective assistance of counsel claim would satisfy the cause-and-prejudice standard. *See United States v. Patten,* 40 F.3d 774, 776 (5th Cir.1994) (per curiam), *cert. denied,* --- U.S. ----, 115 S.Ct. 2558, 132 L.Ed.2d 811 (1995); *United States v. Pierce,* 959 F.2d 1297, 1301 (5th Cir.), *cert. denied,* 506 U.S. 1007, 113 S.Ct. 621, 121 L.Ed.2d 554 (1992).[5] Thus, neither of Gaudet's claims is procedurally barred, and we proceed to the merits of his motion.

## III.

Gaudet's first claim is that the court lacked jurisdiction to

---

[5]Furthermore, ineffective assistance claims ordinarily are brought for the first time on collateral review because of the difficulty of compiling an adequate record by the time of direct appeal. *See Pierce,* 959 F.2d at 1301.

accept his guilty plea. He argues that FED.R.CRIM.P. 7(b),[6] requires an explicit waiver of indictment in open court and that the failure to obtain an explicit waiver deprived the court of jurisdiction to accept his plea. The government concedes that Gaudet did not expressly waive indictment but argues that waiver may be implicit in a colloquy between the court and the defendant.

Other circuits have held that a waiver of indictment can be implicit. In *United States v. Travis,* 735 F.2d 1129, 1131-32 (9th Cir.1984), the court inferred a waiver of indictment from the circumstances of the case before it:

> The record reveals that Travis was informed of his rights and the charges against him in open court, he had the assistance of counsel during plea negotiations, and he entered a guilty plea to charges of which he had received notice by virtue of the original indictment. Although there may have been no explicit waiver, on the basis of the record before this court we find that waiver was implicit in the entry of Travis' guilty plea, and affirm.

The court also characterized the alleged defect as a " "technical violation' of the rule, not a constitutional one." *Id.* at 1131.

In *Ornelas v. United States,* 840 F.2d 890 (11th Cir.1988), the court also inferred a waiver of indictment from the circumstances of the case before it:

> Rule 7(b) authorizes the prosecution of a felony by information if the defendant waives indictment. The Rule does not require an express waiver; depending on the circumstances

---

[6]Rule 7(b) reads:

> An offense which may be punished by imprisonment for a term exceeding one year or at hard labor may be prosecuted by information if the defendant, after having been advised of the nature of the charge and of the rights of the defendant, waives in open court prosecution by indictment.

of the case, a waiver can be implied.  All that Rule 7(b) commands is that the defendant waive indictment and that he do so in open court.

*Id.* at 892 (footnote omitted).[7]  The court went on to say that "the district court's failure to obtain from the appellant an express waiver of indictment before accepting his plea to an information constituted ... a mere "technical violation' of Rule 7(b)."  *Id.* (quoting *Travis,* 735 F.2d at 1131).  The court also noted that "[a] technical violation of Rule 7(b) is not an error that warrants relief pursuant to 28 U.S.C. § 2255."  *Id.*

Gaudet tries to distinguish these cases, arguing that the

---

[7]We offer here the Eleventh Circuit's analysis of *Ornelas:*

Considering the circumstances under which the appellant chose to change his plea and what transpired at his rearraignment, we conclude as a matter of law that he waived prosecution by indictment in this case.  During his plea negotiations with the prosecutor, the appellant's lawyer apparently indicated that his client refused to plead guilty to any of the charges contained in the existing indictment but would be willing to plead to a less serious charge, e.g., a section 1952 offense.  Such a plea could not be entertained, however, unless the appellant waived indictment and pled to an information;  the parties were in the midst of trial and the prosecutor simply had no time to re-present the case to the grand jury and acquire a new indictment.  Because the appellant wanted to abort his trial and bring his prosecution to an end, his lawyer advised the prosecutor that the appellant would waive indictment and plead to an information.  Counsel then agreed that the information would allege a section 1952 offense, and a tentative plea agreement was reached. The appellant promptly accepted the deal and changed his plea.  At rearraignment, when the appellant informed the court that he wished to plead to the information, which superseded his pending indictment, he effectively waived reindictment within the meaning of Rule 7(b).

840 F.2d at 892 (footnotes omitted).

7

waivers of indictment in *Travis* and *Ornelas* were implied in express plea agreements entered in open court.  We find Gaudet's argument unpersuasive.

The reasoning of the Ninth and Eleventh Circuits did not depend on the plea agreements in those cases.  Rather, the key to those cases was that the defendants had already been validly indicted and had voluntarily chosen, for whatever reason, to plead guilty to a superseding bill of information.  The *Travis* and *Ornelas* cases stand for the proposition that, where a valid indictment has already been obtained, a defendant's decision to plead to a superseding bill of information includes an implicit waiver of indictment that satisfies rule 7(b).  We find the reasoning of these courts persuasive, and we hereby adopt it.

Gaudet's reliance on *United States v. Macklin,* 523 F.2d 193 (2d Cir.1975), is misplaced.  In that case, the grand jury's statutory term had expired before it had handed down the indictment.  *See id.* at 195.  Thus, the defendant had not been validly indicted.  *See id.*  *Macklin* did not involve a situation in which the defendant knowingly and voluntarily chose to proceed by information.

The *Macklin* court also found that the only possible predicate for a waiver of indictment was the guilty plea itself.  *See id.* at 196.  The court stated that the guilty plea alone could not satisfy the formal waiver requirements of rule 7(b).  *See id.*  The *Macklin* court did not say that a waiver must be express, but only that it must be made in open court.  *See id.*  Furthermore, the *Macklin*

8

court did not opine that a waiver could never be inferred from the circumstances of the case—*e.g.,* from a colloquy in open court between the district court and the defendant.

Unlike the defendant in *Macklin,* Gaudet had already been validly indicted when he pled to a superseding bill of information. Furthermore, the colloquy between the court and Gaudet reveals that the court informed Gaudet that he was pleading to a superseding bill of information as to the first twenty-two counts. Even more probative of an implicit waiver is the stark fact that Gaudet himself affirmatively requested the superseding bill of information.

Gaudet places unwarranted emphasis on the district court's isolated and inadvertent use of the term "indictment" during the colloquy, when the court in fact was referring to the information. He argues now that he never understood that he was not pleading to an indictment on all counts. This argument is meritless. The district court and the prosecutor used the correct terms—*e.g.,* "information," "superseding bill of information," etc.—an overwhelming percentage of the time during the colloquy. Viewed in the context of the entire colloquy, the isolated reference to the information as an indictment is a grossly insufficient basis from which to argue that Gaudet believed he was pleading only to an indictment—particularly when Gaudet himself affirmatively requested a superseding bill of information as part of his defense strategy.

Given these facts, it would be inconceivable to hold that Gaudet did not knowingly and voluntarily, albeit implicitly, waive

9

prosecution by indictment. Accordingly, we conclude that Gaudet did implicitly waive prosecution by indictment, and we follow the Ninth and Eleventh Circuits in holding that an implicit waiver of indictment satisfies rule 7(b).

## IV.

Gaudet also claims that he received ineffective assistance of counsel. Under *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), a defendant claiming ineffective assistance must prove (1) that his attorney's representation was deficient and (2) that he was prejudiced by the deficiency. In order to satisfy the first prong of the *Washington* test, Gaudet must show that "counsel made errors so serious that counsel was not functioning as the "counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Because we ultimately conclude that Gaudet has failed to demonstrate that Craft's performance was deficient, we need not address the prejudice prong of the *Washington* test. *See id.* at 697, 104 S.Ct. at 2069.

## A.

Gaudet first claims that Craft was constitutionally ineffective because he failed to object when the pre-sentence report was presented and when the district court determined that the sentencing guidelines should not apply to the first eighteen counts in the bill of information. Gaudet argues that this constituted an unjustifiable, mid-stream abandonment of his primary defense strategy.

Gaudet's argument rests on the premise that his straddle

10

offense theory was meritorious. To the contrary, Gaudet has not pointed to a single decision of any court that had, by the time of Gaudet's sentencing, accepted the theory that embezzlement was a straddle offense. The one case that Gaudet does cite in support of his straddle offense theory, *United States v. Young,* 955 F.2d 99, 109 (1st Cir.1992), had not been decided at the time Gaudet was sentenced. The fact that Craft did not pursue the straddle offense theory at sentencing can therefore hardly be said to be deficient. Such a "failure" certainly does not lead us to conclude that Craft "was not functioning as the "counsel' guaranteed the defendant by the Sixth Amendment." *Washington,* 466 U.S. at 687, 104 S.Ct. at 2064.

Gaudet also argues that Craft was constitutionally ineffective when he failed to move to withdraw Gaudet's guilty plea after it became apparent that the district court had not accepted the straddle offense theory. At the evidentiary hearing on this § 2255 motion, however, Craft stated unequivocally that he never believed in the straddle offense theory. He said that he proceeded as he did—*i.e.,* without moving for withdrawal of the guilty plea—because he felt there was a possibility that the sentencing court would follow the public policy embodied in the guidelines and apply the guidelines anyway.

This is precisely the kind of strategic choice that the *Washington* Court instructed us not to second-guess:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining

11

> counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.... Because of the difficulties inherent in making the evaluation [of counsel's challenged conduct], a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered trial strategy."

*Id.* at 689, 104 S.Ct. at 2065 (citation omitted). Gaudet has not overcome this presumption. Once again, he has failed to demonstrate that Craft "was not functioning as the "counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. at 2064.

B.

Gaudet also argues that Craft was constitutionally ineffective because he failed to object to the order requiring Gaudet to surrender his pension benefits on the ground that the order violated ERISA. This claim, however, lies outside the scope of § 2255 because it is a challenge to a cash fine and does not meet the "in custody" requirement of § 2255. *See Segler,* 37 F.3d at 1136-37 (holding that Congress "meant to limit the types of claims cognizable under § 2255 to claims relating to unlawful custody"). We therefore do not reach the merits of this claim.

Gaudet, therefore, has failed to demonstrate that Craft's performance was deficient. Having concluded that Gaudet has not satisfied the first prong of the *Washington* test, we need not reach the second prong.

In sum, Gaudet implicitly waived his right to be prosecuted by indictment, and this implicit waiver of indictment satisfied rule

12

7(b).  Gaudet has not demonstrated that there was ineffective assistance of counsel.  The district court thus correctly denied his § 2255 motion, and, accordingly, we AFFIRM.