**UNITED STATES of America**

v.

**Shelby DANIELS.**

**Nos. CIV. 396CV2996–BC, CIV. 392CR029–BC.**

United States District Court, N.D. Texas, Dallas Division.

July 16, 1998.

## MEMORANDUM OPINION AND ORDER

BOYLE, United States Magistrate Judge.

Before the Court, is Defendant Shelby Daniels' Motion to Vacate and Set Aside a Conviction and Sentence, filed pursuant to 28 U.S.C. § 2255.[1] Having reviewed the record of this case, the pleadings, and the relevant authority, this Court DENIES the motion for the reasons that follow.

*Background*

On April 30, 1992, Defendant, Shelby Daniels ("Daniels"), pled guilty to one count of bank fraud under 18 U.S.C. § 1344. *Guilty Plea, Tr. at 4, 5.* On July 9, 1992, he was sentenced to 27 months imprisonment and a five year term of supervised release. *Sentencing. Tr. at 6.* On August 3, 1992 Daniels completed his prison sentence and began his term of supervised release. On February 22, 1996, the District Court revoked his supervised release and sentenced him to nine months imprisonment. *See Judgment entered February 22, 1996.* Thereafter, on November 1, 1996 he filed the instant motion.

In his § 2255 Motion Daniels asserts three grounds for relief. First, he attacks the voluntariness of his guilty plea, contending, in essence, that he is not guilty of the crime to which he pled. *Def.'s Mot. at 3,4.* Secondly, he argues that he was subjected to double jeopardy when the Government forfeited certain of his personal property and thereafter prosecuted him in this case. *Def.'s Mot. at 4.* Thirdly, Daniels claims his counsel was ineffective for failing to adequately investigate the facts and circumstances of his case. *Id.* at 22–25. Before addressing Daniels' claims, the Court will briefly review the extent of relief available to him under § 2255.

*Scope of Relief Under Available Under § 2255*

It is settled that " 'a collateral challenge may not do service for an appeal'."

*United States v. Shaid,* 937 F.2d 228, 231 (5th Cir.1991) quoting *United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982). In defining the scope of collateral challenge under § 2255, the *Shaid* court instructed, "A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude, (internal citation omitted), and may not raise an issue for the first time on collateral review without showing both ' "cause" ' for his procedural default, and ' "actual prejudice" ' resulting from the error." *Shaid,* 937 F.2d at 232. The cause and prejudice test applies even to allegations of fundamental constitutional error. *Id.,* citing *Murray v. Carrier,* 477 U.S. 478, 493, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986). The only exception to the application of the cause and prejudice test is where a movant can establish a fundamental miscarriage of justice coupled with the defendant's actual innocence of the crime for which he is convicted. *Shaid,* 937 F.2d at 232 citing *Carrier,* 477 U.S. at 496, 106 S.Ct. at 2649. (other citations omitted). The cause and prejudice test, however, does not apply to claims of ineffective assistance of counsel which are ordinarily brought for the first time on collateral review. *United States v. Gaudet,* 81 F.3d 585, 589 n. 5 (5th Cir.1996) citing *United States v. Pierce,* 959 F.2d 1297, 1301 (5th Cir.1992).

With the foregoing authority as a guide, the Court next examines whether Daniels' claims are subject to *Shaid's* procedural bar.

Although Daniels filed a direct appeal after his conviction, none of the grounds he raises in his present motion to vacate were presented to the Fifth Circuit in that appeal. *United States v. Daniels,* No. 92–1621, slip op. (5th Cir. July 15, 1993). By failing to raise his claims on direct appeal, Daniels has procedurally defaulted on these claims and may raise them collaterally only by meeting the cause and prejudice standard or by demonstrating that he is " 'actually innocent' " of his crime. *Bousley v. United States,* —— U.S. ——, 118 S.Ct. 1604, 1610–11, 140 L.Ed.2d 828 (1998) quoting *Carrier,* 477 U.S.

---

1. On June 20, 1997, both the defendant and Government consented to proceed before this

Court for all proceedings, including final judgment, pursuant to 28 U.S.C. § 636(c).

at 985, 496 106 S.Ct. at 2643–44, 2649–50, 91 L.Ed.2d 397 (other citations omitted). With this in mind, the Court reviews each of Daniels' claims to determine if he has overcome the foregoing "procedural hurdles" to warrant a review of his claims.

### Claim No. 1–Guilty Plea

Turning first to Daniels' claim that he is not guilty of bank fraud, the Court finds that he has failed to satisfy the cause and prejudice test and is likewise deficient in demonstrating actual innocence. Neither Daniels' lengthy § 2255 motion or his 10–page reply brief address the cause and prejudice issue. Instead, Daniels attempts to justify his failure to raise his § 2255 claims on direct appeal by relying on the "deliberate bypass" standard discussed in *Buckelew v. United States.*[2] *See Reply at 2, 3.* However, this court finds the deliberate bypass standard unavailing to Daniels. Specifically, based on the Supreme Court's pronouncement in *Bousley, supra,* that the "cause" and "prejudice" standard applies to procedurally defaulted claims raised via § 2255, this Court finds that it is the cause and prejudice standard rather than the deliberate bypass test that Daniels must satisfy to have his claims heard on their merits.[3]

■ A review of Daniels' motion reveals that he has wholly failed to establish either cause for his procedural default or prejudice resulting from the error.[4] Consequently, his sole avenue for obtaining a review of his claims is to establish that the constitutional errors of which he complains " 'ha[ve] probably resulted in the conviction of one who is actually innocent.' " *Bousley,* 118 S.Ct. at 1611 quoting *Carrier,* 477 U.S. at 496, 106 S.Ct. at 2649. "To establish actual innocence, [the defendant] must demonstrate that, ' "in light of all the evidence," ' 'it is more likely than not that no reasonable juror would have convicted [the defendant].' " *Bousley,* 118 S.Ct. at 1611 quoting *Schlup v. Delo,* 513 U.S. 298, 327–28, 115 S.Ct. 851, 867–868, 130 L.Ed.2d 808 (1995) (other citations omitted).[5]

■ Daniels asserts that he is innocent of the bank fraud offense to which he pled guilty and now stands convicted. Based on the foregoing case authority, Daniels may surmount the procedural bar to his claims based on his claim of innocence only if he can demonstrate his actual innocence of the bank fraud charge. In determining whether Daniels has made the requisite showing, the Court may consider all relevant evidence whether or not the evidence was available at

**2.** 575 F.2d 515, 519 (5th Cir.1978).

**3.** Whether the deliberate bypass test survives *Bousley* is not specifically addressed by the high court in that case. Nonetheless, it appears doubtful that it continues to govern collateral attacks of federal convictions in the aftermath of *Bousley.* Moreover, the Supreme Court has specifically rejected deliberate bypass as the test for raising collateral challenges to state court convictions in favor of the cause and prejudice test. See *Woods v. Johnson,* 75 F.3d 1017, 1029 n. 16 (5th Cir.1996) citing *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992).

**4.** Daniels' claim that he is innocent of the crime to which he pled guilty rests squarely on two cases decided by the Fifth Circuit in which the Circuit found that the defendants' conduct did not constitute bank fraud. See *United States v. Medeles,* 916 F.2d 195 (5th Cir.1990) and *United States v. Briggs,* 939 F.2d 222 (5th Cir.1991)(discussed in detail in the portion of this opinion addressing the facts underlying Daniels' guilty plea.). However, both of these cases were decided prior to Daniels' guilty plea and therefore

foreclose any argument by him that this case authority was not "reasonably available" to him at the time of his direct appeal. See *Bousley,* 118 S.Ct. at 1611.(petitioner argued that his procedural default should be excused because the " 'legal basis for his claim was not reasonably available to counsel' at the time his plea was entered.")

**5.** The Court recognizes the distinction between substantive and procedural claims of actual innocence enunciated by the Supreme Court in *Schlup,* 513 U.S. at 313–17, 326–27, 115 S.Ct. at 860–862, 866–67, 130 L.Ed.2d 808 (1995). (applying *Carrier's* less stringent standard to procedural claims of actual innocence). In *Bousley,* the defendant, like Daniels, claimed that he had been misinformed about the elements of the offense to which he had pled guilty. *Bousley,* 118 S.Ct. at 1608. The Supreme Court applied *Carrier's* standard as the test the defendant had to satisfy to overcome a procedural bar based on a claim of actual innocence. Based on the high court's treatment of the defendant's claim in *Bousley,* this Court finds that Daniels' claim of innocence is likewise procedural in nature and, thus, applies the *Carrier* standard to determine if his claims should be heard on their merits.

the time of Daniels' plea. *Schlup*, 513 U.S. at 327–28, 115 S.Ct. at 867–68. With this in mind, the Court reviews Daniels' claim that he is innocent of bank fraud.[6]

██ In a lengthy argument challenging his guilty plea, Daniels contends that his conduct underlying his conviction did not amount to bank fraud under 18 U.S.C. § 1344. More specifically, Daniels claims that when he pled guilty he was under the mistaken belief that his actions in entering fraudulent credit card transactions into an electronic point-of sale terminal which, in turn, caused the order of a wire transfer of funds to a bank constituted bank fraud, when it did not. *Def.'s Mot at 3,4; Reply at 4–8.* In deciding whether Daniels' has met his burden of establishing actual innocence, the court naturally looks first to the available facts relevant to his culpability and then applies the relevant legal authority to those facts.

The facts supporting Daniels' culpability are set forth in the indictment and factual resume. Daniels pled guilty to Count 3 of the indictment which charged a violation of 18 U.S.C. § 1344 [7] as follows:

> From on or about December 1, 1991, through on or about December 19, 1991, in the Dallas Division of the Northern District of Texas, defendant Shelby Daniels, did knowingly execute and attempt to execute the aforesaid scheme and artifice to defraud East Park National Bank, Dallas, Texas, a financial institution, and to obtain

money, funds, credits, and assets owned by and under the custody and control of said financial institution by means of false and fraudulent pretenses, representations, and promises, in that the defendant caused the wire transfer of credit card funds to the East Park National Bank in the amount of approximately $359,117.62, well knowing that these said credit card fund transfers were false and fraudulent obtained. A violation of Title 18 U.S.C. § 1344.[8]

The factual resume supporting the defendant's conviction and adopted by the defendant when he entered his plea, states in pertinent part:

> From on or about November 7, 1991, until on or about December 19, 1991, the Defendant Shelby Daniels, executed and attempted to execute a scheme and artifice to defraud and obtain money and property from others. In order to effectuate the scheme, Daniels used a point of sale terminal in a name other than his own, used a bank account other than his own to receive fraudulently obtained funds, used credit card access numbers which were fraudulently obtained and used telephone lines to transmit fraudulent representations of access numbers. Additionally, Daniels used a mail box at an address other than his own for the purpose of receiving mail, applied for credit cards by using names and social security numbers which were not his own, requested that credit cards be mailed to mail boxes other than his own and used

---

6. The Court recognizes that by reviewing Daniels' claim regarding his guilty plea in detail, it is necessarily reviewing this claim on the merits. However, in view of his claim of innocence and the detail with which he has supported that claim, the undersigned finds it necessary to undertake such an analysis to determine whether or not he has made colorable showing of factual innocence.

7. Section 1344 provides:
Whoever knowingly executes, or attempts to execute, a scheme or artifice—. . .
(1) to defraud a financial institution; or
(2) to obtain any of the monies, funds, credits, assets, securities, or other property owned by, or under the custody of control, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than I million dollars or in prison not more than thirty years, or both.

8. As set forth above, the count to which Daniels pled alleges that he violated § 1344 but does not specify which provision of the statute is implicated by his conduct. A review of the charge in Count 3 suggests that both provisions of the bank fraud statute are applicable. However, as set forth in the factual resume supporting Daniels' plea, it appears that Daniels' conviction can only be upheld under subsection 2 of the bank fraud statute. The factual resume does not suggest that East Park National Bank suffered even a potential loss based upon Daniels' conduct. Rather, it appears that Daniels' culpable conduct is in attempting to obtain funds in the custody and under the control of that bank, rendering the violation actionable only under subsection 2. See *Briggs*, 939 F.2d at 225 (**although the government charged the defendant under both provisions of the bank fraud statute, the record supported a conviction only under subsection 2.**)

credit cards fraudulently obtained to receive things of value.

Specifically, Daniels obtained a point of sale terminal from Sammy Aycock and entered numerous fraudulently obtained credit card access numbers in order to make fraudulent credit card transactions. During the time frame between December 9, 1991, and December 11, 1991, Daniels submitted ninety-five fraudulent credit card transactions in the amount of $359,-117.62. Daniels planned to have the proceeds from these transactions deposited into Sammy Aycock's account at the East Park National Bank. Daniels planned to have Aycock withdraw this money and deliver it to him. The scheme was discovered before Daniels could actually obtain this money.

Throughout 1991, Daniels also operated a bogus credit "cleansing" company. Daniels misrepresented to customers that he could help them clean up their credit. In reality, Daniels assisted them to fraudulently assume the credit identities of others. Daniels accessed credit bureau files and obtained personal information on various people. He then used this personal information to submit applications for credit using his own address as a return mailing address. After Daniels obtained the credit cards, he used them to make charges or cash ATM withdrawals.[9]

Daniels' version of the facts, as set forth in his § 2255 motion, appears to be that, while he did enter the fraudulent credit card transactions into the point-of-sale terminal, that the wire transfer was automatically "program" (sic) by Harbridge (see fn. 9). *Def.'s Reply at 6,7.* Put simply, Daniels' somewhat confusing argument seems to boil down to a contention that in causing the order of a wire transfer of funds to East Park National Bank, he made no false statements, representations or promises essential elements of subsection 2 bank fraud-and is, therefore, not guilty of bank fraud.

With these facts as a backdrop, for Daniels' claim of innocence, the Court turns to the applicable authority.

■ It is a violation of due process "to convict someone of a crime on the basis of conduct that does not constitute the crime." *United States v. Briggs,* 939 F.2d 222, 228 (5th Cir.1991). To convict an individual under these circumstances, "offends the basic notions of justice and fair play embodied in the constitution." *Id.*

The defendant cites both *Briggs, supra,* and *United States v.. Medeles* [10] in support of his contention that his conduct did not constitute bank fraud and consequently, that his guilty plea should be set aside. Both of those cases, however, are factually dissimilar to this case and, thus, do not support his argument.

In *Medeles,* the defendant was convicted by a jury of bank fraud based on his involvement in a check-kiting scheme. The defendant kited checks between his bank accounts knowing the checks to be drawn on insufficient funds. The Fifth Circuit reversed the defendant's conviction, finding that the record failed to reflect any evidence that the defendant made any false representations to carry out his scheme as required under the relevant provision of the bank fraud statute. *Medeles,* 916 F.2d at 197–202. The court's rationale in reversing the convictions in *Medeles* was that "an order to a bank contained in a check is not a factual representation and

---

9. The Fifth Circuit's review of the facts on direct appeal provides further elucidation as to the facts supporting Daniels' culpability:

Daniels entered into a scheme in which he obtained a "point of sale" credit card terminal belonging to Sammy Aycock, one of the proprietors of a pawn shop located in Dallas, Texas. Normally, Harbridge Merchant Services ("Harbridge") would accept credit card transactions from Aycock for payment by Mastercard and Visa, and then deposit the dollar amounts in Aycock's bank account at East Park National Bank. Daniels' scheme involved entering numerous fraudulently obtained credit card access numbers in order to make fraudulent credit card transactions. Daniels planned to have the money deposited in Aycock's account and have Aycock withdraw the money and deliver it to him. Harbridge discovered the scheme before Daniels could obtain the money. *United States v. Daniels,* No. 92–1621, slip op. at 2 (5th Cir. July 15, 1993).

10. 916 F.2d 195 (5th Cir.1990).

therefore cannot be a misrepresentation." *Briggs*, 939 F.2d at 226, citing *Medeles*.

The Fifth Circuit later, in *Briggs*, found this reasoning equally applicable to wire transfer orders. *Id.* In *Briggs*, the defendant contended that she pled guilty to bank fraud with a "mistaken belief" that her conduct in ordering unauthorized wire transfers from her employer's bank accounts alone amounted to culpable conduct under the bank fraud statute. 939 F.2d at 228. The Fifth Circuit remanded the case to the trial court after a review of the record revealed that the plea proceedings including the factual resume contained no evidence that Briggs had made "false representations, statements, or promises in carrying out her scheme." *Id.* at 226. In remanding the case, the Fifth Circuit explained: "[t]he bare act of instructing a bank to transfer funds is not a factual representation; thus, it cannot be a *mis*representation, a *false* representation, or *any kind* of representation." *Id.* The *Briggs* decision, appeared to rest on the dearth of record evidence regarding false representations by the defendant. Put simply, the record simply did not reflect whether the defendant had or had not made any misrepresentations regarding her authority to act. *Id.* And the Court was careful to state that it was not holding that a wire transfer can never constitute a misrepresentation only that the act *itself* does not constitute a misrepresentation. *Id.* at 227. The Court noted that a wire transfer containing either an actual or implied misrepresentation of authority to act may suffice to establish bank fraud. *Id.*

In contrast to *Medeles* and *Briggs*, in *United States v. Miller*,[11] the D.C. Circuit Court affirmed the bank fraud conviction of a defendant who had used his employer's ATM card and personal four-digit code to withdraw funds from his employer's bank account. On appeal the Defendant, citing, *inter alia, Medeles,* argued that the unauthorized withdrawals were akin to check-kiting which, he argued, other circuits had found insufficient to establish fraud. 70 F.3d at 1355. The appeals court rejected this argument and distinguished both *Medeles* and *Briggs* by noting that the defendant had

used his employer's personal four-digit code to withdraw the funds, an act akin to cashing a check with a forged signature, which conduct expressly violates the bank fraud statute. *Id.* at 1355–56.

Other courts have identified conduct which involved some form of misrepresentation or deceptive practice sufficient to sustain a bank fraud conviction. See *United States v. Burnett,* 10 F.3d 74, 78 (2d Cir.1993) citing *United States v. Bonnett,* 877 F.2d 1450, 1453 (10th Cir.1989) (defendant's conviction affirmed based on the deceptive practices in the use of the worthless checks); *United States v. Falcone,* 934 F.2d 1528 (11th Cir.) vacated, 939 F.2d 1455 (1991), reinstated in relevant part, 960 F.2d 988 (en banc), cert. denied 506 U.S. 902, 113 S.Ct. 292, 121 L.Ed.2d 216 (1992). See also *United States v. Davis,* 989 F.2d 244, 247 (7th Cir.1993) (depositing of three forged money orders sufficient to constitute bank fraud); *United States v. Stone,* 954 F.2d 1187, 1191 (6th Cir.1992) (false oral statements to bank manager regarding defendant's bank account, sufficient under bank fraud statute) and *United States v. Sayan,* 968 F.2d 55, 61 n. 7 (D.C.Cir.1992) ("false signatures and endorsements on checks and drafts would have supported conviction under Subsection 2 had statute been in effect when that conduct occurred").

A review of the foregoing case authority suggests that, under the facts of this case, Daniels' reliance upon *Briggs* and *Medeles* is misplaced. Contrasted with the defendants' actions in those cases, the factual resume supporting Daniels' conviction indicates that his scheme was carried out through overt false representations as to his authority to act. Put simply, this was much more than a simple wire transfer of funds as in *Briggs*. As established by the factual resume, in order to obtain the funds that were to be placed in the bank's custody, Daniels had to submit 95 different fraudulent credit card transactions by using a point of sale terminal in a name other than his own, by using credit card access numbers fraudulently obtained and by using a bank account which did not

---

11. 70 F.3d 1353, 1355–56 (D.C.Cir.1995).

lawfully belong to him. Only by expressly misrepresenting facts with respect to the credit card transactions and his authority to act, was Daniels able to attempt to carry out his scheme. See *Briggs,* 939 F.2d at 227 ("[A] wire transfer order containing an *actual* misrepresentation (e.g. a false recitation of the authority for its issuance)" falls within the bank fraud statute's prohibitions.). Had Daniels not falsely represented his authority to act, he would not have been able to attempt to access the funds in the custody of the East Park National Bank.[12] It is the record evidence of his false representations in carrying out his scheme that distinguishes this case from *Briggs* and *Medeles* and likens it to *Miller, supra.* Because the factual resume in this case reflects that Daniels falsely represented his authority to act in his attempt to carry out his bank fraud scheme, he cannot establish his actual innocence of his crime of conviction and, consequently, this claim is procedurally barred from consideration.

*Claim No. 2—Double Jeopardy*

Daniels next argues in vague terms that was subjected to double jeopardy when the government forfeited certain of his personal property and later prosecuted him criminally in the instant case. *Def.'s Mot. at 19.* This claim is also barred due to Daniels failure to satisfy the cause and prejudice test or, as set forth in detail above, demonstrate his actual innocence of bank fraud.

 Moreover, this claim fails on its merits. Daniels does not identify the personal property he asserts was involved in the alleged forfeiture which caused the claimed double jeopardy violation. Nor does he spec-

ify when the alleged civil forfeiture took place.[13] Mere conclusory allegations on a critical issue fail to present a constitutional claim. *United States v. Pineda,* 988 F.2d 22, 23 (5th Cir.1993).

In sum, Daniels' double jeopardy claim is procedurally barred. Moreover, his claim is wholly conclusory and does not specify what property was subject to forfeiture and under what circumstances, leaving the court to speculate on the dates and facts supporting this claim.

*Claim No. 3–Ineffective Assistance of Counsel*

 In his third claim for relief, Daniels contends that his counsel was ineffective for failing to independently investigate the facts and circumstances of his case. *Def's Mot. at 22.* He also complains that his attorney did not interview potential defense witnesses. Id. Daniels provides no factual detail to support these allegations.

Although properly before the Court in a § 2255 motion,[14] these conclusory allegations cannot serve as the basis for a claim of ineffective assistance of counsel. See *Anderson v. Collins,* 18 F.3d 1208, 1221 (5th Cir.1994) (stating that "without a specific, affirmative showing of what the missing evidence or testimony would have been, 'a habeas court cannot even begin to apply *Strickland's* standards' because 'it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any of the deficiencies in counsel's performance.'") (citation omitted). Moreover, "mere conclusory allegations do not raise a

---

**12.** The fact that the funds were never deposited in the bank is of no moment to the lawfulness of his conviction because the statute permits a conviction based on the *"attempt* to execute" a scheme to defraud a financial institution. *See n. 7, supra.*

**13.** Significantly, he raised a similar contention in a § 2255 motion filed on June 19, 1997 in Case No. 3–95–CR–281–G. At the time Daniels' supervised release was revoked in this case, he had also been separately indicted in cause No. CR–3–95–281–G. *See Govt.'s Response at 2.* He was sentenced to nine months imprisonment on the revocation to run consecutively with his sentence in Case No.3–95–281–G. In that case he argued

that his sentence should be vacated because the federal prosecution in that case, filed subsequent to state *in rem* civil forfeiture proceedings based on the same conduct, violated the double jeopardy clause of United States Constitution. *See Findings filed July 3, 1997, 3–95–CR–281–G.* This Court, rejected that argument and recommended to the District Court that his motion be denied for the reasons set forth in findings entered July 3, 1997. *Id.* The District Court adopted those findings denying Daniels' petition in that case on July 15, *1997. See Judgment entered July 15,1997.*

**14.** See *Pierce, supra,* 959 F.2d at 1301.

**576**

constitutional issue in a habeas proceeding." *Ross v. Estelle,* 694 F.2d 1008, 1012 (5th Cir.1983).

Daniels' complaint with respect to his attorney is wholly conclusory and cannot support a request to vacate his conviction and for that reason must be denied.

*Conclusion*

For the forgoing reasons, Daniels' **Motion to Vacate and Set Aside a Conviction and Sentence, is DENIED.**