United States Court of Appeals,

Fifth Circuit.

No. 91–7314

Summary Calendar.

UNITED STATES of America, Plaintiff–Appellee,

v.

Susan Carol BRIGGS, Defendant–Appellant.

July 9, 1992.

Appeals from the United States District Court for the Northern District of Texas.

Before JOLLY, DAVIS, and SMITH, Circuit Judges.

PER CURIAM:

Susan Carol Briggs appeals from the district court's denial of her 28 U.S.C. § 2255 motion to vacate her sentence. We affirm.

I

A

This case is already the subject of two published opinions by this court. Briggs challenged the validity of her 1986 conviction by a plea of guilty to two counts of bank fraud pursuant to 28 U.S.C. § 2255.[1] The district court denied the motion and an appeal ensued. Initially, this court reversed Briggs' conviction and remanded for entry of a new plea. *United States v. Briggs,* 920 F.2d 287, 296 (5th Cir.1991). Thereafter, we *sua sponte* granted rehearing, withdrew our prior opinion, and remanded for an evidentiary hearing to determine whether Briggs' guilty plea was knowing and intelligent. *United States v. Briggs,* 939 F.2d 222, 228–29 (5th Cir.1991).

Following the hearing on remand, the magistrate judge recommended that the § 2255 motion be denied because Briggs' conduct involved "implied" misrepresentations. The district court adopted

---

[1]Briggs did not appeal from her conviction or sentence.

the magistrate judge's recommendations and held that Briggs' implied misrepresentations were sufficient to support a conviction under applicable provisions of the bank fraud statute;  therefore, her plea was knowing and intelligent.  *See* 18 U.S.C. § 1344(a)(2).  Briggs appeals that ruling.

## B

From 1981 to 1986, Briggs worked first in the Treasury Department of Electronic Data Systems ("EDS") and later as an Assistant Cash Manager for Southmark Corporation ("Southmark").  Her day-to-day responsibilities at EDS and Southmark involved the investment of surplus cash in company accounts at financial institutions.

Between 1984 and 1986, Briggs initiated over a dozen unauthorized transfers from bank accounts at Texas Commerce Bank and San Jacinto Savings and Loan Association belonging to an EDS subsidiary and to Southmark, respectively.  These transfers, totalling more than five million dollars, were made to Dallas accounts belonging to Briggs, her two sons, and a friend.

In perpetrating her scheme, Briggs never made any overt misrepresentations, false promises, or false statements to any financial institution.  She would, however, purposefully mislead the bank employees by submerging the unauthorized transfers in the midst of and for the same amounts as authorized ones.  She did not disclose her lack of authority to make the unauthorized transfers.  She admitted that she believed, at the time she caused the unauthorized transfers, that the bank employees who handled her telephone calls thought she was making legitimate business transfers.  She pretended to have authority to transfer the money and did "everything possible to make it sound like those transfers were the same as" the authorized transfers.

## II

Briggs raises two issues on appeal.  First, the district court erred when it found that she had entered her guilty plea knowingly and intelligently.  Second, she did not put the transferring banks

at risk when she transferred funds from her employer's accounts; therefore, she did not violate the bank fraud statute.

## A

Briggs contends that she pleaded guilty to bank fraud under the mistaken belief that her conduct, in initiating wire transfers from her employers' accounts at financial institutions to her own accounts and others, constituted false or fraudulent pretenses, representations, or promises under the bank fraud statute, 18 U.S.C. § 1344(a)(2).[2]  Therefore, she argues, her guilty plea was not knowingly and intelligently entered and was procured in violation of her due process rights under the United States Constitution.

In its opinion, this court carefully delineated the basis for its holding that the record did not reveal whether Briggs executed her scheme by means of any false or fraudulent pretenses, representations or promises and described the specific facts which should be developed on remand:

> We do not hold that the ordering of a wire transfer can never involve misrepresentation, only that the act *itself* does not constitute misrepresentation.  For example, our precedent makes clear that § 1344(a)(2) would encompass a wire transfer order containing an *actual* misrepresentation (e.g., a false recitation of the authority for its issuance).  Thus, where the defendant falsely represents that she is acting under her employer's authority, we would have little trouble concluding that such conduct is squarely

---

[2]As enacted in 1984, and as applicable to this case, the bank fraud statute provided in relevant part:

> (a) Whoever knowingly executes, or attempts to execute, a scheme or artifice—
>
> > (1) to defraud a federally chartered or insured financial institution;  or
> >
> > (2) to obtain any of the moneys, funds, credits, assets, securities or other property owned by or under the custody or control of a federally chartered or insured financial institution by means of *false or fraudulent pretenses, representations, or promises,* shall be [fined or imprisoned].

18 U.S.C. § 1344(a) (1988) (emphasis added).  The bank fraud statute was amended in 1989;  the amendment does not affect the analysis of this case.  *See Briggs,* 939 F.2d at 225 n. 6.  This court has already concluded that section 1344(a)(1) does not apply to this case.  *Id.* at 225.

prohibited by the statute. Nor do we suggest that there can never be an *implied misrepresentation* of authority in such circumstances....

*Briggs,* 939 F.2d at 227 (italics in original, footnote omitted, underscore added). In other words, an implicit misrepresentation by Briggs that she was acting under her employer's authority would be sufficient to establish the misrepresentation element of section 1344(a)(2).

"We review the district court's factual findings in a section 2255 proceeding for clear error. The clear error standard applies equally to findings made by the magistrate judge and adopted by the district court." *United States v. Cates,* 952 F.2d 149, 153 (5th Cir.1992) (citations omitted), *cert. denied,* ─── U.S. ───, 112 S.Ct. 2319, ─── L.Ed.2d ───. The magistrate judge found that Briggs' conduct impliedly misrepresented her authority to make the wire transfers. After a review of the record, we cannot say that this finding was clearly erroneous.[3] Indeed, it is clear that Briggs falsely held herself out to have authority, which she in fact did not have. This conduct constitutes a false pretense within the meaning of the statute. Briggs failed to meet her burden of proving that her plea was unknowing and unintelligent. *Briggs,* 939 F.2d at 228–29.

B

Briggs also argues that a person cannot commit bank fraud without exposing a bank to risk. She cites *Tanner v. United States,* 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987), and *United States v. Lemons,* 941 F.2d 309, 316 (5th Cir.1991). According to Briggs, the bank must be a target or victim of the fraud. Briggs testified that EDS and Southmark were the targets of her fraud and that she never intended to steal from Texas Commerce Bank or San Jacinto Savings and Loan Association. It is established that a perpetrator's fraud need not cause a financial institution to suffer

---

[3]*See United States v. Morgenstern,* 933 F.2d 1108, 1113 (2nd Cir.1991), *cert. denied,* ─── U.S. ───, 112 S.Ct. 1188, 117 L.Ed.2d 430 (1992) (accountant committed bank fraud through deliberate pattern of deceptive conduct designed to convince bank he was acting as duly authorized agent of third-party victim by mixing legitimate transactions with illegitimate transactions); *United States v. Bonnett,* 877 F.2d 1450, 1456 (10th Cir.1989) ("A representation ... consist[s] of words, made orally or in writing, or *other conduct* manifesting to another the existence of a material present or past fact" (emphasis added)).

an actual loss for a valid conviction under § 1344. *Lemons,* 941 F.2d at 315–16; *Morgenstern,* 933 F.2d at 1112–14; *United States v. Church,* 888 F.2d 20, 24 (5th Cir.1989). In a section 1344(a)(2) case, it is only necessary that the custodial bank be exposed to the risk of loss, i.e., exposed to civil liability. *See Lemons,* 941 F.2d at 315–16.

Although the record does not disclose whether the banks were ever threatened with a civil action by EDS, Southmark or one of the banks to which Briggs transferred funds, her conduct clearly put those institutions at risk. *See Morgenstern,* 933 F.2d at 1114 ("By falling prey to this scheme the bank lost custody over its accountholder's money, exposing the bank to the real threat of civil liability for having succumbed to Morgenstern's fraudulent conduct"); *see, generally, Bradford Trust Co. v. Texas American Bank–Houston,* 790 F.2d 407 (5th Cir.1986) (as between initiating bank and receiving bank, initiating bank was liable for losses resulting from fraudulently induced wire transfer (applying Texas law)).

## III

The judgment of the district court is therefore

AFFIRMED.