989 F.2d 496
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Shahram SHIRKHANI, Defendant-Appellant.
 No. 92-5234.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: November 30, 1992
Decided: March 17, 1993
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, District Judge. (CR-91-133-R)
 Anthony R. Gallagher, Acting Federal Public Defender, Beth M. Farber, Assistant Federal Public Defender, Baltimore, Maryland, for Appellant.
 Richard Cullen, United States Attorney, N. George Metcalf, Assistant United States Attorney, Richmond, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before WILKINSON and HAMILTON, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Shahram Shirkhani appeals the district court's order denying his Fed. R. Crim. P. 32(d) motion to withdraw his guilty plea to money laundering, in violation of 18 U.S.C. § 1957 (1988), and the judgment subsequently entered thereon. He contends that the district court erred by denying his Rule 32(d) motion without first inquiring into the grounds supporting the motion. Shirkhani also contests the sufficiency of the government's evidence to support hiss 1957 conviction. Based on the facts presented in this case, we find no error and, therefore, affirm Shirkhani's conviction. We also deny Shirkhani's motion for a stay of forfeiture proceedings pending this appeal.
 
 I.
 
 2
 According to the government's evidence, Shirkhani was employed by Markel Corporation ("Markel") as their Director of Taxation from September 1989 to May 1991.[1] One of his responsibilities was the estimation of Markel's tax liabilities to various governmental entities. Upon Shirkhani's presentation of the estimates, Markel officials would issue checks in those amounts to Signet Bank ("Signet"), a federally insured financial institution. Markel maintained various accounts at Signet, including a special account for its tax liabilities. The Markel checks issued upon Shirkhani's tax estimates would be drawn on general Markel operating accounts at Signet and deposited into this tax account. Contemporaneously presented tax deposit coupons directed Signet to credit the tax account's balance to governmental entities in satisfaction of Markel's tax liabilities.
 
 
 3
 Shirkhani's fraudulent activities began with the intentional overestimation of Markel's tax liabilities. He presented the exaggerated estimates to Markel officials, and received checks for those amounts. Shirkhani then deposited the checks into Markel's tax account at Signet, and instructed various Signet employees to issue cashier's checks from that account to various entities and accounts that were under Shirkhani's exclusive control and not entitled to receive Markel's assets. These payees included Shirkhani's personal account at Credit Suisse in New York City. Shirkhani provided Signet employees with specific written instructions detailing how the cashier's checks were to be drafted, including names of payees, amounts, and Social Security numbers. On at least one occasion, Shirkhani required a Signet employee to omit any mention of Markel in the "Reference" portion of a cashier's check, thereby discouraging Signet's contact with Markel in case of check discrepancies to prevent detection by Markel officials. J.A. at 48-49. Between November 7, 1990, and May 15, 1991, Shirkhani converted twenty-nine Markel checks into thirty-one Signet cashier's checks, for a total loss to Markel of $1,909,714.51.
 
 
 4
 Shirkhani was charged in a forty-six count superseding indictment with bank fraud, interstate transportation of stolen monies, and money laundering. Pursuant to a written plea agreement, Shirkhani entered a plea of guilty on January 8, 1992, to Count Forty, which charged him with laundering money derived from bank fraud in violation of § 1957. After one continuance on Shirkhani's motion, a sentencing hearing was conducted on April 3, 1992. At the beginning of the hearing, the following exchange took place between the court and Shirkhani's attorney:
 
 
 5
 MR. COLLINS: Judge, if I may first, we would have a preliminary motion. On behalf of Mr. Shirkhani I would move the Court to continue sentencing and permit him to retain other counsel. He has spoken with David Whaley, who is present in Court, and is prepared to take over as his counsel. I would ask the Court to grant the motion to continue the sentencing.
 
 
 6
 THE COURT: The motion will be denied.
 
 
 7
 MR. COLLINS: I would ask the Court then to allow Mr. Shirkhani to withdraw his guilty plea.
 
 
 8
 THE COURT: Motion will be denied.
 
 
 9
 J.A. at 92. No further mention was made of Shirkhani's motion to withdraw his guilty plea. Neither the defense counsel in his presentation or arguments nor Shirkhani in his testimony proffered any reason for the requested plea withdrawal. Although it never stated the grounds for denying Shirkhani's motion to withdraw his guilty plea, the court did state that the requested continuance was denied because Shirkhani had already used the ploy of hiring and firing four to six attorneys for the purpose of securing continuances.
 
 
 10
 After finding that the plea was knowingly and voluntarily made, and that Shirkhani had indeed committed the acts alleged in Count Forty, the court imposed a two level enhancement for abuse of a position of trust. United States Sentencing Commission, Guidelines Manual, § 3B1.3 (Nov. 1991). Shirkhani was sentenced to seventyeight months imprisonment, three years supervised release, and $743,744.17 in restitution.
 
 II.
 
 11
 The denial of a motion to withdraw a guilty plea is subject to an abuse of discretion review on appeal. United States v. Moore, 931 F.2d 245, 248 (4th Cir.), cert. denied, 60 U.S.L.W. 3261 (U.S. 1991).
 
 
 12
 Rule 32(d), Federal Rules of Criminal Procedure, requires a defendant to make a showing of "any fair and just reason" for the withdrawal. If a defendant cannot make the requisite showing, the motion to withdraw is to be denied even if the government would not be prejudiced by the granting of the motion. United States v. Haley, 784 F.2d 1218, 1219 (4th Cir. 1986); 3 Charles A. Wright, Federal Practice and Procedure § 538 (Supp. 1992); Fed. R. Crim. P. 32 advisory committee note, 1983 amendment; see also United States v. Rasmussen, 642 F.2d 165, 168 n.6 (5th Cir. Unit B Apr. 1981) (denial of motion is appropriate where no credible reason for withdrawal has been proffered). A defendant may not argue on appeal that the district court abused its discretion in failing to consider arguments that the defendant had the burden to present, but failed to raise, upon filing his Rule 32(d) motion. United States v. Badger, 925 F.2d 101, 104 (5th Cir. 1991). We cannot find, and refuse to create, a requirement that a district court must investigate the grounds for a motion to withdraw a plea upon a defendant's mere invocation of Rule 32(d).
 
 
 13
 In this case, no supporting reason was contemporaneously proffered with Shirkhani's Rule 32(d) motion. Defense counsel neither objected to the court's ruling thereon, nor sought to supplement the record at any time during the sentencing hearing to reflect the grounds for the motion to withdraw. Shirkhani's testimony was similarly void of any justification for the motion or assertion of innocence. See United States v. Benavides, 793 F.2d 612, 618 (5th Cir.) (absence of assertion of innocence weighs heavily against a defendant's Rule 32(d) motion), cert. denied, 479 U.S. 868 (1986); Cantwell v. United States, 163 F.2d 782 (4th Cir. 1947) (same). Considering the context in which the motion was made, it is manifestly apparent that the motion was merely a fall back position designed to forestall the sentencing proceedings in the event Shirkhani's continuance motion was denied. The trial court did not abuse its discretion in denying a Rule 32(d) motion that lacked a fair and just reason for the requested withdrawal.[2]
 
 III.
 
 14
 Shirkhani contends that the government's evidence did not support the essential element for conviction under § 1957 that he obtained the monies by means of false or fraudulent pretenses, representations, or promises. Thus, he maintains that his guilty plea was entered in violation of his due process rights. Shirkhani seeks remand to the district court for an evidentiary hearing to determine whether he had the actual authority to issue cashier's checks from Markel's special tax account at Signet. Shirkhani contends that, if he indeed had such authority, no misrepresentations were made and no bank fraud was committed.
 
 
 15
 Section 1957 requires that the monetary transactions involve property derived from "specified unlawful activity," as defined in 18 U.S.C.A. § 1956(c)(7) (West 1985 & Supp. 1992). 18 U.S.C. § 1957(a). The "specified unlawful activity" Shirkhani allegedly committed was bank fraud, in violation of 18 U.S.C.A.s 1344 (West 1985 & Supp. 1992). Count Forty of the indictment against Shirkhani tracks the language of § 1344(2), which requires that the misrepresentation be made to a financial institution to cause it to relinquish the monies. See United States v. Bales, 813 F.2d 1289, 1293 (4th Cir. 1987). By alleging the underlying "specified unlawful activity" of bank fraud, Count Forty subsumes the essential elements of bank fraud as a necessary predicate to conviction unders 1957. See United States v. Hayes, 775 F.2d 1279, 1282 (4th Cir. 1985); Fed. R. Crim. P. 7(c)(1).
 
 
 16
 There is disagreement between the parties as to the appropriate standard of review to be applied to this second issue. The government contends that this Court should consider Shirkhani's argument as a challenge to the sufficiency of the evidence. Under that argument, the Court would apply the standard under Jackson v. Virginia, 443 U.S. 307, 319 (1979), of whether, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential element of misrepresentation beyond a reasonable doubt. However, if, as the government contends, Shirkhani's guilty plea is indeed valid, then Shirkhani has already admitted all material elements of the § 1957 offense, McCarthy v. United States, 394 U.S. 459, 466 (1969), and waived all non-jurisdictional defects, including the right to contest the factual merits of the § 1957 charge. United States v. Freed, 688 F.2d 24, 26 (6th Cir. 1982). Hence, the Jackson standard is inapplicable to this case.
 
 
 17
 Shirkhani, framing his argument in terms of the alleged conduct being insufficient to constitute a crime, argues that the lack of misrepresentation evidence is a question of law that should be reviewed de novo on appeal. According to Shirkhani, if he had the authority to issue cashier's checks from Markel's tax account, the only misrepresentation was between him and Markel, which does not constitute an offense under either § 1344(2) or § 1957 because the mere act of diverting Markel's funds is not a misrepresentation to a bank. United States v. Briggs, 939 F.2d 222, 226-27 (5th Cir. 1991) ("Briggs I ") (a wire transfer or check presentation, "without further showing of the circumstances," does not necessarily constitute a misrepresentation); but see United States v. Celesia, 945 F.2d 756, 759 (4th Cir. 1991) (the mere act of check kiting can constitute a "scheme or artifice to defraud" under § 1344(1)).
 
 
 18
 If this was indeed the extent of the government's evidence, then Shirkhani would be correct in considering the issue of lack of misrepresentation evidence to be a question of law. However, Shirkhani fails to recognize the facts presented at the plea hearing which show that Shirkhani did more than simply divert Markel's funds. J.A. at 47-48. As such, the Court is no longer presented with a question of law but, rather, a question of the validity of the district court's factual determination that the government's evidence presented facts sufficient to support accepting Shirkhani's guilty plea. This second issue must therefore be subjected to the clearly erroneous standard of review. United States v. Armstrong, 951 F.2d 626, 629 (5th Cir. 1992); United States v. Guichard, 779 F.2d 1139, 1146 & n.11 (5th Cir.), cert. denied, 475 U.S. 1127 (1986).
 
 
 19
 The government's evidence relevant to the issue of misrepresentation showed that Shirkhani physically presented the Markel checks, representing Shirkhani's exaggerated estimates of Markel's tax liabilities, to Signet employees for deposit into Markel's tax account. J.A. at 46-47. Signet employees knew, through previous business dealings with Markel, its tax account, and the tax deposit coupons, that the Markel account was set up for the express purpose of satisfying Markel's tax liabilities. See id. at 45-47. Under the guise of conducting legitimate business transactions in his role as Markel's Director of Taxation, id. at 47 ("[H]e led tellers at Signet Bank's branches at Innsbruck [sic] and Parham Road to believe that in his capacity with the insurance company, that he had the authority to convert these checks to cashier's checks."), 48 ("The defendant had no authority whatsoever to convert the checks that he was converting to the sources to which he converted them."), Shirkhani then duped Signet employees into facilitating his unauthorized and unlawful scheme through the issuance of cashier's checks, pursuant to Shirkhani's written instructions, to the various entities and accounts that were under Shirkhani's exclusive control and not entitled to receive Markel's assets. Id. at 49-55.
 
 
 20
 Shirkhani did not object to the presentation of any of these facts at the plea hearing. Instead, Shirkhani admitted his commission of the illegal acts outlined by the government and summarized by the court.[3] J.A. at 55-57. Shirkhani's present argument based upon the scope of his authority from Markel is without merit for, even if Shirkhani had the actual authority to issue cashier's checks from Markel's tax account, that authority could not have possibly extended so far as to permit him to instruct Signet employees to issue cashier's checks to these unauthorized payees. Shirkhani's implicit misrepresentation that he was acting within his authority caused Signet, without Markel's authorization, to relinquish custody of funds held on behalf of Markel, thereby exposing Signet to potential civil liability for unauthorized transfers of monies. United States v. Morgenstern, 933 F.2d 1108, 1114 (2d Cir. 1991), cert. denied, 60 U.S.L.W. 3579 (U.S. 1992); see also United States v. Lemons, 941 F.2d 309, 315-16 (5th Cir. 1991) (bank is victimized when fraudulent conduct places it at risk of loss). Shirkhani also fraudulently placed Signet at risk of a loss by inducing it to issue cashier's checks, to which Signet thereby became guarantor. See 1 James J. White & Robert S. Summers, Uniform Commer- cial Code § 18-5 at 907 (3d ed. 1988); 5A Michie on Banks and Banking § 185 at 569 (Michie 1983).
 
 
 21
 This case is very similar to the fraudulent scheme at issue in Morgenstern. As in Morgenstern, 933 F.2d at 1113, Shirkhani's fraud consisted of two separate types of deceptive conduct, one directed toward Markel and the other directed at Signet. Shirkhani first fraudulently induced Markel to draw checks payable to Signet for nonexistent tax liabilities, and then fraudulently induced Signet and its employees into believing that he had the requisite authority to convert these checks into cashier's checks payable to various entities and accounts under his exclusive control as part of his legitimate work for Markel. Id. Shirkhani was able to gain control over Markel's assets only by successfully misleading Signet into believing that he had this authority. "In this sense, [his] fraudulent misrepresentation to the bank of his authority to [so convert those checks] was an indispensable part of his overall scheme, and justifies application of the federal bank fraud statute to his conduct." Id.
 
 
 22
 The facts presented by the government at the plea hearing constitute the "further showing of the circumstances" which the Briggs I court held could, when combined with the mere fact of a wire transfer or a check presentation, constitute an unlawful misrepresentation. Briggs I, 939 F.2d at 227. As in United States v. Briggs, 965 F.2d 10 (5th Cir. 1992) ("Briggs II "), the government's additional showing that Shirkhani implicitly misrepresented to Signet that his illicit activities were within the authority granted him by Markel satisfied the misrepresentation element required for conviction under § 1957. Briggs II, 965 F.2d at 12. Based upon the evidence presented at the plea hearing, we find that the district court's acceptance of Shirkhani's plea was not clearly erroneous. We therefore affirm Shirkhani's conviction.[4]
 
 
 23
 We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 Shirkhani obtained the job by fraudulently representing to Markel that he was an attorney and a certified public accountant; in truth, he was neither. Joint Appendix (J.A.) at 45
 
 
 [2]
 The six factors enunciated by this Court in Moore lend further support to the district court's denial of Shirkhani's Rule 32(d) motion. Moore, 931 F.2d at 248. First, Shirkhani has offered no credible evidence that his plea was neither knowing nor voluntary. Given the comprehensive plea hearing conducted by the court and Shirkhani's level of education, which includes some law school course work, J.A. at 73-74, it seems unlikely that Shirkhani could disavow the knowing and voluntary nature of his plea. Second, Shirkhani has never made a credible assertion of his innocence; instead, as in Moore, he disputes some of the details of the government's version of the case and their characterization. Moore, 931 F.2d at 248. Third, Shirkhani delayed nearly three months before requesting leave to withdraw his guilty plea. Fourth, Shirkhani had the benefit of close and competent assistance from at least five attorneys throughout the proceedings below and suffered no prejudice therefrom. Hill v. Lockhart, 474 U.S. 52 (1985). Fifth, although there is little evidence that withdrawal would prejudice the government, "these factors are only balancing considerations, and so the lack of prejudice to the government, in and of itself, is not dispositive." Moore, 931 F.2d at 248. Finally, withdrawal of the plea would be an exercise in futility because, as demonstrated infra, Shirkhani's claims have no merit
 #. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of veracity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").
 
 
 [4]
 We also deny Shirkhani's Motion for Stay of Governmental Forfeiture of Assets Pending Appeal because (1) it is rendered moot by the disposition of his appeal, and (2) it seeks to stay a civil administrative forfeiture proceeding, independent of the criminal charges contemplated herein, which could be pursued even if Shirkhani's conviction had been overturned. See United States v. One Assortment of 89 Firearms, 465 U.S. 354 (1984)