# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 00-20385

## MAX GLEN MCCAULEY
## MOHAMED CHENDEKA

Defendants-Appellants

VERSUS

## UNITED STATES OF AMERICA

Plaintiff-Appellee

Appeal from the United States District Court
for the Southern District of Texas

June 7, 2001

Before POLITZ and BARKSDALE, Circuit Judges, and FALLON, District Judge.[*]

FALLON, District Judge:

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

Max Glen McCauley and Mohamed Chendeka appeal their convictions for bank fraud and conspiracy to commit bank fraud arguing that the evidence produced at trial was insufficient to support the jury verdict. Chendeka additionally challenges the sentencing enhancement for obstruction of justice imposed by the district court. We

affirm both convictions and Chendeka's sentence.

## I.

In April of 1999, Cornelius Fields and his sister Latrinda Fields conspired to divert funds from a Chase Bank account to a MetroBank account using an unauthorized electronic wire transfer. Latrinda, an employee in the accounting department of Western Atlas International, a division of the Baker Hughes company, agreed to prepare a request for the treasury department of Baker Hughes to wire funds from its Chase Bank account to the bank account of a false company. Cornelius was responsible for obtaining the documentation necessary to establish a corporation and bank account able to receive the transfer.

Cornelius Fields contacted his former co-worker Max Glen McCauley to create the fraudulent bank account. McCauley solicited the assistance of Mohamed Chendeka to execute the scheme. Chendeka introduced McCauley to his co-worker Derick Jones who had agreed to prepare the documents required to create a corporation and a bank account.[2]

Jones completed a "doing business as" (d/b/a) certificate of operation for a sole proprietorship named "D & M Impex." He then opened a bank account for D & M Impex at MetroBank on May 5, 1999. When a bank employee questioned Jones about the company, he explained that it had been operating for one year. Jones also made two deposits of $100 and $400 with money provided by Chendeka, McCauley, and Cornelius and Latrinda Fields.

Jones provided the corporate documents and bank account information on D & M Impex to Chendeka who copied the documents for McCauley.[3] McCauley then delivered the documentation to Cornelius Fields who in turn provided it to Latrinda Fields to initiate the wire transfer.

On May 17, 1999, Latrinda Fields volunteered to facilitate wire transfers from Baker Hughes' treasury department to Chase Bank of Texas although she did not normally handle such transfers. She faxed an invoice requesting that Baker Hughes transfer $150,000 for "lost equipment" from its Chase Bank account to D & M Impex's MetroBank account.[4] The request listed several serial numbers for the equipment and included authorizing signatures from other employees.[5] On the basis of the apparently authorized request, the Baker Hughes treasury department finalized the wire transfer and funds were transferred from its Chase account to the D &M Impex account

---

[2] Chendeka and Jones had previously discussed starting an import/export business. Chendeka explained to Jones that his father would wire money from Africa to fund their venture if Jones prepared the documents required to start the company. Chendeka, however, refused to accompany Jones to complete the paperwork or to be named on any of the documents.

---

[3] Chendeka explained to Jones that his father would wire $150,000 into the account in one week to begin their business.

[4] The wire transfer request mistakenly listed "D & M Impex Construction" as the payee.

[5] Serial numbers for the equipment matched numbers listed on a legitimate invoice Fields had prepared earlier. The requesting and authorizing signatures were from employees who testified that they never signed the document.

2

at MetroBank.

With the transfer complete, Cornelius Fields, McCauley, Chendeka, and Jones organized to retrieve the money from the MetroBank account. First, Chendeka and Jones went to a MetroBank location to withdraw $25,000 for alleged business expenses. When Jones submitted a withdrawal slip, the teller inquired about the nature of the business, requested identification, and told Jones that he would need to speak with the manager before completing the withdrawal. The manager, suspicious of the lack of activity in the account, informed Jones that he could not access the money unless he received confirmation from the transferor that he was entitled to the funds.[6]

After failing to withdraw $25,000 from this branch, Chendeka and Jones attempted to collect $1,000 from another MetroBank location. Bank employees indicated to Jones, however, that their computers could not complete the transaction.

MetroBank, suspicious of these attempts to withdraw money, contacted Chase Bank and the FBI about the wire transfer. FBI agents told MetroBank not to release the funds to Jones. When Jones returned to MetroBank with new corporate documents for "D & M Impex Construction," he was met by FBI agents, interviewed, and invited to cooperate in an investigation.

At the request of the agents, Jones contacted Chendeka and explained that he

had withdrawn the money and wanted to meet. Jones met Chendeka at a parking lot, gave him the money, and then FBI agents arrested both men. After his arrest, Chendeka agreed to contact Cornelius Fields and McCauley and arrange a meeting. Chendeka met Cornelius Fields and McCauley at McCauley's home where they all were arrested.

McCauley and Chendeka were tried by a jury and each convicted of bank fraud and conspiracy to commit bank fraud. They moved for acquittal which the district court denied. McCauley was sentenced to thirty-three months imprisonment and three years supervised release, and Chendeka was sentenced to twenty-four months imprisonment and three years supervised release.

Both defendants now appeal their convictions on the sufficiency of the evidence. Chendeka also argues that district court erred by increasing his sentence for obstruction of justice. We first consider the challenges to the convictions.

II.

McCauley and Chendeka argue that the evidence presented by the government was insufficient to prove beyond a reasonable doubt that they committed bank fraud and conspiracy to commit bank fraud.

This Court reviews jury verdicts with great deference and evaluates "the evidence in the light most favorable to the verdict and 'afford[s] the government the benefit of all reasonable inferences and credibility choices.'" *United States v. Odiodio*, 99-11202, 2001 WL 242478, at *2 (5th Cir. Mar. 9, 2001) (quoting *United States v. Gray*, 96 F.3d 769, 772 (5th Cir. 1996)). A district court's denial of motions for judgment of acquittal is reviewed de novo. *United States v. De Leon*, 170 F.3d 494, 496

---

[6] The manager of MetroBank also testified that she had received a cryptic telephone message on May 18, 1999 requesting that funds be released to "D & M Construction" for shipping and construction costs. Chendeka later admitted to FBI agents that he had left the message.

(5th Cir. 1999).

When considering a challenge to the sufficiency of the evidence for a conviction, the Court considers "whether, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Id.* "All reasonable inferences from the evidence must be construed in favor of the jury verdict." *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992) (citing *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)). "An appellate court will not supplant the jury's determination of credibility with that of its own." *Id.* (citing *United States v. Barron*, 707 F.2d 125, 127 (5th Cir. 1983)).

Appellants question the government's proof of intent and of loss, both of which must be proved beyond a reasonable doubt to support convictions for bank fraud and conspiracy to commit bank fraud.

### A.

McCauley and Chendeka first argue that the evidence does not prove that they knowingly participated in a scheme to defraud Chase Bank or MetroBank. McCauley explains that he did not make misrepresentations to MetroBank to obtain account information. Chendeka maintains that his attempts to withdraw money from MetroBank were not material misrepresentations.

In order to establish the elements of bank fraud under 18 U.S.C. § 1344, the government must prove beyond a reasonable doubt

> that the defendant[s] knowingly executed or attempted to execute a scheme or artifice 1) to defraud a financial institution or 2) to obtain any property owned by, or under the custody or control of a financial institution by means of false or fraudulent pretenses, representations or promises.

*Odiodio*, 2001 WL 242478, at *2. A scheme to defraud includes using false pretenses or representations to obtain money from the institution to be deceived. *See United States v. Doke*, 171 F.3d 240, 243 (5th Cir. 1999). "The requisite intent to defraud is established if the defendant acted knowingly and with the specific intent to deceive, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to himself." *Id.*

The evidence clearly demonstrates that McCauley and Chendeka executed or attempted to execute a scheme or artifice to defraud a financial institution. McCauley and Chendeka attempted to defraud Chase Bank and MetroBank, financial institutions insured by the Federal Deposit Insurance Corporation ("FDIC"), by aiding in the creation of a fraudulent bank account for a fictitious vendor company. They made false representations to MetroBank to induce it to release fraudulently transferred funds. All of these actions were done in furtherance of a scheme demonstrated to defraud the banks in violation of § 1344.

Appellants also contend that the mere act of instructing a bank to transfer funds is not a misrepresentation constituting bank fraud under § 1344(2). In *United States v. Briggs*, this Court held that an employee who falsely represents having the authority to transfer funds does so under false pretenses in violation of the statute. *See* 965 F.2d 10 (5th Cir. 1992). In the present case, McCauley and Chendeka participated in a scheme in which Latrinda Fields misrepresented her authority to falsify a wire transfer.

Appellants contributed to this conspiracy

4

by creating a bank account on behalf of a fictitious company and by attempting to retrieve the funds. The evidence demonstrated that they knowingly misrepresented information to MetroBank to influence it to release funds transferred by Chase Bank. *See United States v. Foster,* 229 F.3d 1196, 1197 (5th Cir. 2000). Therefore, we find the evidence sufficient to support the jury's finding that McCauley and Chendeka knowingly participated in a scheme to defraud financial institutions.[7]

B.

McCauley and Chendeka secondly argue that neither Chase Bank nor MetroBank were exposed to civil liability or risk of loss from the scheme. They explain that the acts of Latrinda Fields put the funds of her employer, Western Atlas, at risk rather than the funds of either bank. Because these financial institutions never faced civil liability nor suffered financial losses, appellants contend that they cannot be found guilty of bank fraud.

In order to prove bank fraud, the government must demonstrate that the defendants placed the financial institution at risk of civil liability or financial loss and that

---

[7] The evidence also supports the conspiracy convictions against appellants. To establish a conspiracy, the government need prove "(1) an agreement between two or more persons (2) to commit a crime, and (3) an overt act committed by one of the conspirators in furtherance of the agreement." *United States v. Bruton*, 126 F.3d 666, 670 (5th Cir. 1997). The scheme outlined above and engaged in by appellants satisfies the elements of a conspiracy under 18 U.S.C § 371 because it included overt acts by more than one person to transfer and procure fraudulent funds.

the bank was insured by the Federal Deposit Insurance Corporation. *See Odiodio*, 2001 WL 242478, at *2 (internal citations omitted). It is not necessary, however, for the government to prove that banks actually suffered civil liability or financial loss in order to obtain bank fraud convictions. *See United States v. Waldrip*, 981 F.2d 799, 806 (5th Cir. 1993) (explaining that "loss need not be proven to convict a defendant for bank fraud or making a false statement to a bank" and evidence that there was no loss is not a defense to either crime); *Briggs*, 965 F.2d at 12. *Cf. United States v. Sprick*, 233 F.3d 845, 853 (5th Cir. 2000) (expressing no opinion on bank's civil liability when government failed to offer evidence of liability when a financial advisor misused client's funds).

We dismissed the risk of loss argument made by appellants in *United States v. Briggs* when we considered a similar scheme in which an employee diverted millions of dollars from a corporate account to a personal bank account using unauthorized wire transfers. *See* 965 F.2d at 11. Briggs, like McCauley and Chendeka, claimed never to have made any overt misrepresentations or false statements to any financial institution. *See id.* Yet, Briggs acted similarly to Latrinda Fields in this case by failing to disclose her lack of authority to make the unauthorized transfer. *See id.*

We found in *Briggs* that such a scheme clearly put financial institutions at risk even though the record may not indicate that they were actually threatened with civil liability. *See id.* at 13. McCauley and Chendeka participated in a factually similar conspiracy, and, clearly placed Chase Bank and MetroBank at a risk of loss. *See id.*

The government need only prove a risk of loss to support McCauley's and

Chendeka's convictions for bank fraud and conspiracy to commit bank fraud. *See id.* at 12-13. We also note that the government need not prove a substantial likelihood of risk of loss to support the convictions. *See United States v. Barakett*, 994 F.2d 1107, 1111 (5th Cir. 1993) (holding that deposits of forged checks exposed banks to risk of loss even though they recovered the funds); *United States v. Saks*, 964 F.2d 1514, 1519 (5th Cir. 1992) (holding that fraudulent loan transaction exposed financial institutions to risk of loss even though loan was secured); *United States v. Lemons*, 941 F.2d 309, 316 (5th Cir. 1991) (finding risk of loss to bank from forged endorsed check even though bank suffered no harm); *United States v. Church*, 888 F.2d 20, 23-24 (5th Cir. 1989) (affirming bank fraud conviction for fraudulent overdrafts although "plan was no more likely to succeed than a request that the Bank exchange monopoly money for its face value in U.S. currency"). *Cf. Odiodio,* 2001 WL 242478, at *2 (finding no risk of loss when financial company rather than bank handled fraudulent instrument).

The government satisfied its burden in this case by presenting evidence at trial that Chase Bank lost its ability to earn interest on $150,000 because the funds were transferred to MetroBank for more than one day. Furthermore, Chase Bank and MetroBank were certainly exposed to a risk of loss because McCauley and Chendeka aided in the attempt to withdraw the fraudulently transferred funds. Because we find the evidence presented at trial sufficient to support the jury's verdict, we affirm McCauley's and Chendeka's convictions for bank fraud and conspiracy to commit bank fraud.

III.

Chendeka separately argues that the trial court erred at sentencing by granting the government's request for a two point increase for obstruction of justice based on his alleged perjury at trial.[8] Chendeka explains that he was not aware of the conspiracy and believed that McCauley requested bank account information from him to procure a loan for legitimate business purposes.

The standard of review for findings of fact in applying sentencing guidelines is "clearly erroneous." *See United States v. Greer*, 158 F.3d 228, 233 (5th Cir. 1998).

The district court sentenced Chendeka to twenty-four months imprisonment followed by three years supervised release. Finding that Chendeka made pretrial statements that significantly contradicted his trial testimony, the district court sustained the government's objection to the presentence investigation report and accepted a two point enhancement for perjury pursuant to United States Sentencing Guideline § 3C1.1.[9] We

---

[8] McCauley does not appeal his sentence.

[9] Chendeka's knowledge of the scheme is indicated by his pretrial statements. During a tape recorded conversation between Chendeka, Jones, and Cornelius Fields, Chendeka stated, "Max asked me to get the account set up and I set it up." Govt.'s Ex. 25A at 6. In addition, Chendeka admitted to FBI agents after his arrest that McCauley had asked him to provide an account into which $150,000 could be deposited, that McCauley would pay him $10,000 once the deposit had been made, and that Chendeka knew that the wire scheme was illegal. *See* Tr. Vol.7 at 131-33, 136-37.

find that on the basis of Chendeka's statements before and at trial, the district court did not commit clear error in sustaining the government's objection for obstruction of justice against Chendeka.[10]  Therefore, we affirm Chendeka's sentence.

IV.

For the foregoing reasons, we affirm McCauley's and Chendeka's convictions for bank fraud and conspiracy to commit bank fraud as well as Chendeka's sentence.

AFFIRM.

---

In contrast to his statements before trial, Chendeka testified at trial that his understanding and involvement in the conspiracy was limited to an attempt to obtain a $15,000 loan from McCauley to start his business venture with Jones.  He also testified that he believed that McCauley deposited large amounts of money into the account to hide them from his wife.  *See id*. Vol. 8 at 79, 142-43.

[10] We note, as did the district court, that Chendeka's sentence of twenty-four months imprisonment is within the appropriate Guideline range regardless of whether the two point enhancement is applied to his sentencing recommendation. *See* Sent. Tr. at 5.